IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAROLYN BECKER, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| Defendant | : | NO. 08-1873 |

## REPORT AND RECOMMENDATION

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

This action was brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied the applications of Carolyn Becker for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act"). Presently before this court are the plaintiff's request for review and the defendant's response to request for review. For the reasons set forth below, this court recommends that plaintiff's request for review be DENIED.

I.      FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a forty-two (42) year-old woman born on February 12, 1966. (Tr. 20). Plaintiff completed high school. (Tr. 20 ). Plaintiff worked in the past as a telephone operator, reservation clerk, and waitress. (Tr. 20). Plaintiff lives with her boyfriend and eight (8) year-old daughter. (Tr. 292).

1

On September 1, 2005, plaintiff filed an application for DIB and SSI. (Tr. 12). Plaintiff claims disability since March 17, 2005. (Tr. 89). Plaintiff claims she is disabled due to degenerative joint disease in both knees, lower back pain, right shoulder pain, and major depressive and anxiety disorders. (Tr. 89-92). This application was denied at the state level on November 2, 2005. (Tr. 32). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 36).

A hearing before an ALJ took place on May 3, 2007. (Tr. 12). Plaintiff, represented by counsel, testified, along with a vocational expert ("VE"). (Tr. 286-331). In a decision dated May 21, 2007, the ALJ denied plaintiff's application for DIB and SSI. (Tr. 12-22). The ALJ found that plaintiff's severe impairments were bilateral knee degenerative joint disease/chondromalacia patella/arthritis (right more than left), degenerative disc disease in lumbar spine, obesity, depression, and anxiety. (Tr. 14). The ALJ further determined that plaintiff has the residual functional capacity to perform sedentary work with a sit/stand option. (Tr. 17). Specifically, the ALJ determined that plaintiff was physically limited to sitting no more than 6 hours in an 8 hour workday, standing no more than 2 hours in a normal workday, and lifting and/or carrying 10 pounds. (Tr. 17). The ALJ also determined that plaintiff should avoid crawling, kneeling, and extreme temperatures. (Tr. 17). The ALJ disagreed with a psychiatrist's assessment of plaintiff that plaintiff has significant mental limitations, but the ALJ found that plaintiff has moderate mental limitations. (Tr. 16-17). With respect to plaintiff's mental limitations, the ALJ determined that plaintiff can understand and follow simple instructions and perform routine, repetitive tasks in a low stress work environment. (Tr. 16-17). The ALJ concluded that plaintiff is incapable of performing past relevant work but is able to perform

unskilled sedentary work of credit clerk, order clerk, and charge account clerk.  (Tr. 21).

The ALJ's finding became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on March 27, 2008.  (Tr. 4-6).  Presently, plaintiff has appealed that decision to this court.

II.          LEGAL STANDARDS

A.          Standard of Review

The role of this court, on judicial review of a final decision of the Commissioner of Social Security, is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Pierce v. Underwood, 487 U.S. 552 (1988).  "Substantial evidence" is not "a large or considerable amount of evidence, 'but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. at 564-65, quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Substantial evidence is relevant evidence viewed objectively as adequate to support a decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979).   If substantial evidence of record exists, "the Court is bound by the ALJ's findings of fact...."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

B.          Establishing Disability Under the Social Security Act

To establish a disability under the Social Security Act, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically

3

determinable physical or mental impairment." Heckler v. Campbell, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(1)(A). The claimant must further prove that the impairment prevents him from engaging in "substantial gainful activity" for a period of twelve months. Stunkard v. Sec'y of Health and Human Serv., 841 F.2d 57, 59 (3d Cir. 1988), quoting Kangas, 823 F.2d at 777. To satisfy his burden, the claimant must show an inability to return to his past relevant work. Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979), citing Baker v. Gardner, 362 F.2d 864 (3d Cir. 1966). Once claimant satisfies his burden, the burden of proof shifts to the Commissioner to show that the claimant, given his age, education, and work experience, has the ability to perform specific jobs that exist in the economy. Rossi, 602 F.2d at 57; 20 C.F.R. § 404.1520.

As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i)  At the first step, we consider your work activity if any.  If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.  (iv).  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v).  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.     ADMINISTRATIVE LAW JUDGE'S DECISION

    Using the above-mentioned sequential evaluation process, the ALJ determined that plaintiff had not been under a "disability," as defined in the Social Security Act, from March 17, 2005, plaintiff's alleged onset date, through the date of the ALJ's decision.  (Tr. 21-22).  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since plaintiff's alleged disability onset date.  (Tr. 14).  At step two, the ALJ found that plaintiff's bilateral knee degenerative joint disease/chondromalacia patella/arthritis (right more than left), degenerative disc disease in lumbar spine, obesity, depression, and anxiety were "severe impairments" within the meaning of the Regulation.  (Tr. 14).  In making this determination, the ALJ relied upon the following summarized medical records:

    Plaintiff was treated at Chestnut Hill Health Care on April 12, 2005 for knee pain.  (Tr. 246).  The radiology report indicates that plaintiff underwent x-rays and was diagnosed with mild to moderate osteoarthritis in both knees.  (Tr. 246).  Plaintiff was treated at Chestnut Hill Health Care again on May 2, 2005.  (Tr. 247-248).  The report indicates that an MRI was performed on plaintiff's right knee and showed severe degeneration within the medial femoral tibial compartment as well as chondromalacia involving the patella.  (Tr. 247-248).

    On August 22, 2005, plaintiff was treated at Roxborough Memorial Hospital for knee and back pain, per the request of plaintiff's treating orthopaedist, Dr. Randall Smith.  (Tr. 229-232). The radiology report indicates that an MRI was performed on plaintiff's left knee, which showed no internal derangement.  (Tr. 231).  The report also indicates the

5

presence of mild tricompartmental chondromalacia and a Baker's cyst.[1]  (Tr. 232).  An MRI also

was performed on plaintiff's lumbar spine.  (Tr. 229).  The radiology report indicates that

plaintiff had a small annular disc bulge at L4-L5 with a tiny central disc protrusion at L5-S1.  (Tr.

229-230).  The report also notes that plaintiff did not have lateralizing disc herniations or annular

fissures to account for plaintiff's symptoms.  (Tr. 230).

        Plaintiff was examined by Dr. Yasser Gouda of Delaware Valley

Orthopedic & Spine Center on October 31, 2005, on account of plaintiff's bilateral knee pain,

bilateral calf cramping, and bilateral foot numbness and tingling.  (Tr. 216).  Dr. Gouda's report

indicates that plaintiff "was able to ambulate without any assistive device, able to do toe walking,

heel walking and squatting without any limitations."  (Tr. 216).  Dr. Gouda also stated that a

bilateral straight leg test was performed and the result was negative.  (Tr. 216).  The report notes

that nerve testing was performed on both extremeties and the results were within normal limits.

(Tr. 217).  Additionally, Dr. Gouda documented that an EMG was performed and showed left

peroneal axonal neuropathy.  (Tr. 217).  Dr. Gouda recommended plaintiff take neuropathic

medications.  (Tr. 217).

        From August 3, 2006 through December 22, 2006, plaintiff was treated for

psychiatric issues at Intercommunity Action Incorporated.  (Tr. 252).  Plaintiff initially

complained of childhood molestation, recent car accident, and chronic pain from osteoarthritis.

(Tr. 265).  Plaintiff reported that she began to feel depressed when she lost her job, was

diagnosed with osteoarthritis, and began to feel helpless and useless.  (Tr. 265).  Plaintiff

---

[1]Chondromalacia is the softening of the articular cartilage, most frequently in the patella.
<u>Dorland's Medical Dictionary</u> 344 (29th ed. 2000).

6

explained that she had difficulty getting out of bed and completing household tasks, had frequent crying spells, and was experiencing flashbacks of her childhood molestation. (Tr. 265). In his initial biopsychosocial evaluation of plaintiff, Dr. Neal Gansheroff diagnosed plaintiff with major depressive disorder, single episode, in partial remission. (Tr. 268). The report indicates that Dr. Gansheroff ruled out diagnoses of post-traumatic stress syndrome and generalized anxiety disorder. (Tr. 268-269). With respect to plaintiff's mental limitations, Dr. Gansheroff reported that plaintiff scored 60 on the Global Assessment of Functioning ("GAF") scale.[2] (Tr. 269). In medical records dated September 13, 2006, Dr. Gansheroff reported his diagnosis as moderate major depressive order, generalized anxiety disorder, and post-traumatic tress disorder. (Tr. 264). Dr. Gansheroff also reported plaintiff's score of 55 on the GAF scale.[3] (Tr. 264).

        In a medical source statement dated December 22, 2006, Dr. Gansheroff indicated that plaintiff is "markedly limited" in her abilities to: (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; (5) sustain an ordinary routine without supervision; (6) make simple work-related decisions; (7) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a

---

[2]The Global Assessment of Functioning is a numeric scale (0 through 100) used by mental health clinicians and doctors to "measure the psychological, social, and occupational functioning levels of an individual." Torres v. Barnhart, 139 F. App'x 411, 415 n.2 (3d Cir. 2005)(citations omitted).

[3]A GAF score of 51-60 indicates "moderate symptoms (e.g. flat effect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) at 32.

consistent pace without an unreasonable number and length of rest periods; (8) interact

appropriately with the general public; (9) travel in unfamiliar places or use public transportation;

(10) set realistic goals or make plans independently of others.  (Tr. 258-260).

        Continuing with the five step analysis, the ALJ moved onto step three.  At

step three, the ALJ found that plaintiff does not have an impairment, or combination of

impairments, that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1, Regulations No. 4.  (Tr. 15).

        At step four, the ALJ found that plaintiff has the residual functioning

capacity to perform sedentary work that has a sit/stand option, does not require sitting more than

6 hours or standing more than 2 hours in an 8 hour workday, and does not require lifting or

carrying more than 10 pounds.  (Tr. 17).   Further, the ALJ found that plaintiff should not crawl,

kneel, or work in extreme temperatures.  (Tr. 17).  Finally, the ALJ found that plaintiff is limited

to work for which she has sufficient attention and concentration to understand, requires simple

instructions, and involves routine, repetitive tasks in a low stress environment.  (Tr. 17).  The

ALJ considered plaintiff's medical records, hearing testimony, and the opinion of the vocational

expert in making the decision.  (Tr. 17).  The ALJ determined that plaintiff's medically

determinable impairments could reasonably be expected to produce the alleged symptoms, but

then found that plaintiff's statements concerning the intensity, persistence, and limiting effects of

these symptoms were not entirely credible.  (Tr. 19).

        Plaintiff testified that, on account of pain, she had trouble working and

doing tasks around the house.  (Tr. 305-308).  Plaintiff also testified that she can walk 2 blocks,

stand for 30-60 minutes, sit for 30 minutes, and lift 8-10 pounds, but that she lies down 4-5 times

each day for ½ to 1 hour each time.  However, the ALJ explained that plaintiff's orthopaedist, Dr.

Randall Smith, MD, documented that plaintiff has responded to treatment and that medication

has controlled her symptoms to a "manageable degree."  (Tr. 18).  Further, the ALJ explained

that when plaintiff went to Dr. Smith on June 24, 2005 with complaints of back pain, Dr. Smith

noted that plaintiff had been working on her feet in a bakery all day but previously had a sit down

job.  (Tr. 18, 239).

        Additionally, the ALJ explained that plaintiff underwent a physical

examination by her primary care physician, Dr. Melanio D. Aguirre, MD, on October 13, 2005,

and that Dr. Aguirre documented the exam as normal. (Tr. 18, 141-145).  The ALJ also supported

her finding that plaintiff's symptoms were not entirely credible through a review of Dr. Smith's

progress notes. (Tr. 18).   The ALJ explained that in Dr. Smith's progress notes dated June 16,

2006, Dr. Smith indicated that the medications were improving and stabilizing overall activity

levels.  (Tr. 18, 184).  Dr. Smith also noted that overall the plaintiff was having a satisfactory

result with the present medications, that the physical examination was unchanged, that there were

no progressive neurological abnormalities, and that unaffected areas were still unremarkable.

(Tr. 18, 184).  The ALJ further found that in progress notes dated September 1, 2006, Dr. Smith

stated that plaintiff was alert and oriented, tolerating the medications, and that the medications

were helping with plaintiff's overall quality of life.  (Tr. 18, 178).   Dr. Smith also noted that

plaintiff was not experiencing new side effects and the existing side effects were not significant

to change plaintiff's treatment plan.  (Tr. 18, 178).

        Also with respect to plaintiff's credibility, the ALJ found that plaintiff left

her sedentary job as a telephone operator not on account of plaintiff's impairments, but because

9

the hospital closed.  (Tr. 18).  The ALJ also explained that plaintiff reported to Dr. Smith that her medications were helping with pain.  (Tr. 18, 178).  Thus, the ALJ concluded that the pain is neither uncontrollable nor disabling.  (Tr. 18).  Additionally, the ALJ found that plaintiff's claim of sleeping several times each day is not due to medication side effects, as plaintiff did not report side effects to Dr. Smith.  (Tr. 18).  The ALJ further explained that plaintiff's knee condition has been "medically managed" since she lost her job in March 2005, and thus, plaintiff is capable of performing sedentary work with a sit/stand option.  (Tr. 19).  As such, the ALJ does not believe that plaintiff is incapable fo performing substantial gainful activity.  (Tr. 19).

The ALJ also discussed evidence in the record to which she did not accord weight in making her determination.  (Tr. 19-20).  The ALJ rejected the September 2005 conclusion of Dr. Aguirre that plaintiff is disabled, as the record does not support such a conclusion.  (Tr. 19).  The ALJ gave limited weight to the medical opinion of a State Agency physician, dated October 27, 2005, that plaintiff was suited for "light work.."  (Tr. 19).  The ALJ explained that the record shows that plaintiff is more suited to sedentary work.  (Tr. 19).  Further, the ALJ gave only limited weight to the medical opinion of Dr. Smith.  (Tr. 19).  Dr. Smith indicated in his December 14, 2006 responses to interrogatories that plaintiff could sit for 2 hours and stand for 30-60 minutes in an eight hour work day, and would be likely to miss more than 2 days of work each month.  (Tr. 19).  The ALJ explained, however, that Dr. Smith's record shows that plaintiff was responding positively to treatment and medication.  (Tr. 19).  Finally, the ALJ explained that she rejected the "extreme and marked mental limitations" reported by plaintiff's psychiatrist, Dr. Gansheroff, as Dr. Gansheroff's medical records do not support such severe limitations.  (Tr. 19-20).

In contrast, the ALJ explained that she gave significant weight to the medical opinions of Dr. Gouda, Dr. Smith (other than his responses to interrogatories), and those reflected in the records from Chestnut Hill Health Care and Roxborough Memorial Hospital. (Tr. 20).

Finally, at step five, the ALJ found that plaintiff is unable to perform past relevant work as a telephone operator, reservation clerk, and waitress. (Tr. 20). Nevertheless, the ALJ found that based on plaintiff's age, education, work experience, and residual functional capacity, there are jobs in the national economy that plaintiff can perform. (Tr. 20). As such, the ALJ determined that plaintiff is not under a disability, as defined in the Social Security Act, from March 17, 2005 through the date of the ALJ's decision. (Tr. 21).

In making this determination, the ALJ noted the VE testimony that plaintiff could perform the unskilled sedentary work of credit clerk, order clerk, and charge account clerk . (Tr. 21). At the hearing the ALJ asked the VE to consider a hypothetical individual with plaintiff's age, education, and past work history, who can do sedentary work with sit/stand option and occasional postural activities, but should avoid crawling, kneeling, and extreme temperatures. (317-318). The VE also was told that the hypothetical worker would have the attention span and concentration to understand, remember, and follow simple instructions and perform routine, repetitive tasks in a low-stress environment. (Tr. 317-318). Based on the hypothetical, the VE opined that plaintiff would be able to perform credit clerk, order clerk, and charge account clerk jobs. (Tr. 318).

IV.        PLAINTIFF'S CONTENTIONS

Plaintiff alleges four errors to the ALJ's decision: (1) the ALJ erred by

11

considering that plaintiff's job as a telephone operator was eliminated in deciding plaintiff's credibility on the issue of "disability;" (2) the ALJ erred by finding that plaintiff could perform sedentary work with a sit/stand option; (3) the ALJ erred by finding that plaintiff was not fully credible on the issue of "disability;" (4) the ALJ erred by finding that the VE's testimony was supported by substantial evidence of record.[4]

V.        DISCUSSION

The ALJ's findings must be affirmed if they are supported by substantial evidence. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 401.   The role of this court is to determine whether there is substantial evidence to support the ALJ's decision.  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924, 113 S. Ct. 1294 (1993). In coming to a decision, it is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence.  See Richardson, 402 U.S. at 399.

In the case at bar, the ALJ determined the medical evidence established that plaintiff "has the following severe impairments: bilateral knee degenerative joint disease/chondromalacia patella/arthritis, right more than left; degenerative disc disease in lumbar spine; obesity; depression; and anxiety." (Tr. 14).  The ALJ found that plaintiff has the residual functional capacity to perform sedentary work with a sit/stand option, but is physically limited to sitting no more than 6 hours in an 8 hour workday, standing no more than 2 hours in a normal

_____

[4] Plaintiff also alleges various evidentiary and legal issues.  (Pl. Br. 21-30).  After review of these alleged errors, this court has determined that the four main arguments, listed above, encompass the list of evidentiary and legal issues set forth in Sections III and IV of Plaintiff's Brief.

workday, and lifting and/or carrying 10 pounds.  (Tr. 17).  Further, the ALJ found that plaintiff

should avoid crawling, kneeling, and extreme temperatures.  (Tr. 17).  The ALJ also found

plaintiff's residual functional capacity limited to work requiring simple instructions and routine,

repetitive tasks in a low stress work environment.  (Tr. 17).   The ALJ concluded that plaintiff is

incapable of performing past relevant work but is able to perform unskilled sedentary work of

credit clerk, order clerk, and charge account clerk.  (Tr. 21).  After review of the record, this

court finds the ALJ's decision is supported by substantial evidence as to plaintiff's contentions.

As such, plaintiff's request for review should be DENIED.

A.                              The ALJ's Finding that Plaintiff's Job as Telephone Operator Was
                                Eliminated

Plaintiff contends that the ALJ's finding that plaintiff left her job as a

telephone operator on March 17, 2005 is not supported by substantial evidence of record.  (Pl.

Br. 1).  Plaintiff's counsel testified before the ALJ that plaintiff last worked on March 17, 2005,

after having "been laid off due to the closing of the facility."  (Tr. 289).  Similarly, plaintiff

testified that she was laid off on March 17, 2005.  (Tr. 295).

Without so stating, plaintiff appears to take issue with the ALJ's

assessment of plaintiff's credibility concerning her symptoms at the time she stopped working.

At the hearing, the ALJ specifically asked plaintiff what problems she encountered in performing

the job of telephone operator.  (Tr. 296).  Plaintiff responded that she had pain in her legs and

back and began having difficulty in doing her job.  (Tr. 296).   Plaintiff also added, "it just

became too much."  (Tr. 296).   Based on the hearing testimony, this court finds that the ALJ was

aware of and considered plaintiff's complaints about her health and job.  Additionally, the ALJ

13

reviewed medical evidence concerning plaintiff from April 2005 through December 2006.  (Tr. 18-20).

In light of plaintiff's subjective comments about her symptoms and the objective medical evidence of record, the ALJ ultimately found that plaintiff was not suited for work as a telephone operator, but was suited for sedentary work with a sit/stand option and other limitations.  (Tr. 17-20).  In making this determination, the ALJ assessed plaintiff's credibility in accordance with 20 C.F.R. § 404.1529(c) and considered, *inter alia*,  plaintiff's activities, reports of pain, effectiveness of medications, and treatments. (Tr. 18-20).   Therefore, the ALJ's final decision did not hinge on whether plaintiff left her job as a telephone operator because of health problems or because the hospital closed.   This court has no issue with the ALJ's finding that plaintiff's job was eliminated because the hospital closed nor with the ALJ's assessment of plaintiff's credibility.

B.            The ALJ's Finding that Plaintiff Can Perform Work with a Sit/Stand Option

Plaintiff argues there is no substantial evidence in the record to support the ALJ's finding of a residual functional capacity to perform sedentary work with a sit/stand option. (Pl. Br. 2-17).   Specifically, plaintiff contends that the ALJ erred by rejecting the assessments and opinions of plaintiff's treating orthopaedic surgeon, Dr. Randall Smith, M.D., and plaintiff's treating psychiatrist, Dr. Neal Gansheroff.  (Pl. Br. 3, 14).   Plaintiff claims that only by "picking and choosing among the statements in medical records" was the ALJ able to find a residual functional capacity for sedentary work with a sit/stand option.  (Pl. Br. 2-3).  Plaintiff then cites a host of medical findings that the ALJ "omits," "ignores," and "fails to note."  (Pl. Br. 3-16).

14

While plaintiff correctly asserts that there must be "substantial evidence" in the record to support the ALJ's findings of a residual functional capacity, plaintiff overlooks much of the legal standard that applies here.  With respect to the opinion of a treating physician, the ALJ must afford it great weight, but this is not without limitation.  Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).  The ALJ may reject the opinion of a treating physician if the opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence in the record.  Fargnoli v. Massanari, 247 F.3d 34, 43, (3d Cir. 2001).

When evaluating a treating physician's opinion and the weight it is to be afforded, the ALJ must consider such factors as the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, and any specialization of the opining physician.  20 C.F.R. § 416.927(d)(2).  If there is "conflicting and internally contradictory evidence," the opinion of a treating physician is not necessarily controlling.  Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).  The ALJ, in refusing to credit the testimony of a treating physician, must base his decision to do so on "objective medical evidence" and not "solely on his own amorphous impressions, gleaned from the record and from his evaluation of [the claimant's] credibility."  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000)(citations omitted).

If the treating physician's opinion conflicts with other medical evidence, then the ALJ is free to give that opinion less than controlling weight or even reject it, so long as the ALJ explains her reasons and makes a clear record.  See Jones, 954 F.2d at 129.  An ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that

determination is an administrative finding reserved to the Commissioner.  See 20 C.F.R. § 404.1527(e).

The evidence of record demonstrates that Dr. Smith treated plaintiff from June 2005 through December 2006.  (Tr. 239.).   These records, as plaintiff points out in detail, document plaintiff's symptoms, treatments, medical tests and assessments. (Pl. Br. 3-13).   In an October 2005 letter to plaintiff's primary physician, Dr. Smith noted that plaintiff could not work in her present condition.  (Tr. 222).  Dr. Smith also expressed his view that plaintiff was "a candidate for social security disability."   (Tr. 222).  More than one year later, in his responses to interrogatories dated December 2006, Dr. Smith opined that plaintiff could sit for no more than 30 minutes at a time and for a total of 2 hours in an eight hour day and stand for no more than 30 minutes at a time and for a total of 30-60 minutes in an eight hour day without suffering an exacerbation of severe pain.  (Tr. 170-171).  Dr. Smith also indicated that plaintiff could not lift or carry 10 pounds without suffering an exacerbation of severe pain.  (Tr. 170-171).  In his answers, Dr. Smith also stated that plaintiff should lay down when her pain increases, that she is being treated with narcotics, and that surgery of the knee is being considered.  (Tr. 172).

The ALJ relied on the evidence of record, including documents from Dr. Smith, in finding that plaintiff had severe impairments, but was not disabled.  (Tr. 15-22). Nevertheless, the ALJ found overall inconsistencies in Dr. Smith's documentation, and thus, gave "limited weight" to the opinion of Dr. Smith.  (Tr. 19).  The ALJ noted that while Dr. Smith limited plaintiff's sitting time to no more than 2 hours and standing time to no more than 1 hour in an eight hour work day, Dr. Smith's records show that plaintiff was responding positively to treatment and medications.  (Tr. 19).  The ALJ did not disregard Dr. Smith's opinion, but rather,

16

discussed numerous inconsistencies in the medical record.  In particular, the ALJ explained that while the plaintiff complained of pain to Dr. Smith, Dr. Smith documented that plaintiff has responded to treatment and that the medications are controlling her symptoms to a manageable degree.  (Tr. 18).   The ALJ also explained that during Dr. Smith's initial intake of plaintiff, Dr. Smith noted that plaintiff presented with pain upon standing all day at a new job, but indicated that plaintiff used to have a sit-down job.  (Tr. 18).  Further, the ALJ considered the results of plaintiff's physical examination in October 2005, which were normal.  (Tr. 15).  The ALJ also considered the opinion of another orthopaedist, Dr. Gouda, who conducted nerve and muscle exams in October 2005. (Tr. 18).  Dr. Gouda reported that plaintiff could walk without the use of any assistive device.  (Tr. 18).

Additionally, the ALJ afforded limited weight to Dr. Smith's opinion based on progress notes written by Dr. Smith in 2006.  The ALJ explained that in progress notes dated June 16, 2006, Dr. Smith stated that the medications were improving and stabilizing overall activity levels, that there were satisfactory results with plaintiff's present level of medication, and that the physical exam was unchanged.  (Tr. 18).  Dr. Smith further noted that plaintiff's medications were helping with overall quality of life and that there was no need to change the treatment program.  (Tr. 18).  Plaintiff attempts to explain the inconsistencies within Dr. Smith's records by stating that Dr. Smith had to "confirm the efficacy of medication" with insurers.  (Pl. Br. 5).  Plaintiff also cites law that states that even where medication controls a disorder, it does not follow that a patient can work.  (Pl. R. 2).  The ALJ, however, did not determine plaintiff's ability to work solely based on the efficacy of plaintiff's medication regimen.  (Tr. 17-20).  In light of plaintiff's explanation and the objective medical evidence, this

court is not compelled to accord more weight to Dr. Smith's opinion.

In addition to the reasons the ALJ provided in her decision, there is further evidence contradicting Dr. Smith's opinion.[5]   In progress notes dated June 24, 2005, Dr. Smith indicated that plaintiff was "very active, working, caring for her 6 year old child."  (Tr. 240).  Dr. Smith further noted that he encouraged plaintiff to find a sit-down job.  (Tr. 240).  In a letter dated July 15, 2005 to plaintiff's primary physician, Dr. Smith encouraged plaintiff to continue exercising and indicated that he would adjust her medications.  (Tr. 236).  Several weeks later, on July 29, 2005, Dr. Smith recommended plaintiff be on "light duty" for work.  (Tr. 235).  On September 23, 2005, Dr. Smith indicated that plaintiff's medications were helping her "sleep, get up, exercise and function."  (Tr. 226).  Further contradicting Dr. Smith's opinion, the record contains a letter dated March 2006, in which Dr. Smith documented plaintiff's pain, but noted that the combination of medication, use of a TENS unit, knee braces, and exercise was working.  (Tr. 197).  Several months later, in June 2006, plaintiff underwent a psychological evaluation and indicated that she regularly takes her daughter to camp, does light chores at home, and goes to the pool.  (Tr. 267).   Thus, Dr. Smith's opinion is also inconsistent with plaintiff's admitted activities.   Based on the above medical evidence, the ALJ was justified in rejecting Dr. Smith's opinion as to plaintiff's ability to work and appropriately determined that plaintiff can perform sedentary work with a sit/stand option.

As with Dr. Smith's opinion, plaintiff also asserts that the ALJ committed error by rejecting the assessment of plaintiff's treating psychiatrist, Dr. Neal Gansheroff.  (Pl. Br.

---

[5]While the ALJ was obligated to consider all evidence in the record, the ALJ was not required to discuss in the opinion every "tidbit" of evidence included in the record.  Hur v. Barnhart, 2004 WL 817359, at *2 (3d Cir. April 16, 2004).

14).   In a medical source statement dated December 22, 2006, Dr. Gansheroff found plaintiff to be "markedly limited" in nine areas.  See R & R, Section III.  This court rejects plaintiff's contention that the ALJ did not give appropriate weight to Dr. Gansheroff's views, and concludes that the ALJ adequately explained her credibility determination of Dr. Gansheroff.

The ALJ explained that being "markedly limited" precludes an individual from functioning independently, appropriately, and effectively on a regular basis.  (Tr. 16).  The ALJ determined that Dr. Gansheroff found plaintiff to be "markedly limited," yet Dr. Gansheroff failed to explain why or support his opinion with records from plaintiff's psychiatric treatment. (Tr. 16).  Again, rather than disregard Dr. Gansheroff's opinion, the ALJ reviewed plaintiff's psychiatric medical records and concluded that the record does not support a finding of "markedly limited."  (Tr. 16).  The ALJ explained that in August 2006, Dr. Gansheroff initially diagnosed plaintiff with major depressive disorder, single episode, in partial remission.  (Tr. 16). At this time, Dr. Gansheroff determined that plaintiff scored a 60 on the GAF scale.  (Tr. 16).  In September 2006, however, Dr. Gansheroff diagnosed plaintiff with major depressive disorder and generalized anxiety disorder.  (Tr. 16).  Dr. Gansheroff determined that plaintiff scored a 55 on the GAF scale.  The ALJ noted that plaintiff's GAF scores reflect only moderate difficulty in functioning.  (Tr. 16).

Plaintiff asserts that there was a sufficient opportunity, from August 2006 to December 2006,  for Dr. Gansheroff to reach his assessment concerning plaintiff's limitations. (Pl. Br. 16).  By referencing Dr. Gansheroff's records, plaintiff describes how plaintiff presented at her evaluation, her specific psychiatric symptoms, Dr. Gansheroff's observations and treatments.  (Pl. Br. 14-16).  Plaintiff, however, does not reference any records or evidence that

the ALJ did not review.  The ALJ reviewed the psychiatric records from August 2006 through December 2006, which detail the reasons for which plaintiff sought treatment, the diagnoses, the medications prescribed, and the overall treatment given plaintiff over eight visits. (Tr. 16). Despite consideration of these, the ALJ did not find any evidence to substantiate Dr. Gansheroff's opinion that plaintiff was "markedly limited" and the ALJ so explained in her decision.  This court agrees with the ALJ that the evidence does not support Dr. Gansheroff's opinion that plaintiff's mental impairments are "markedly limited."

Accordingly, there is substantial evidence in the medical record to support the ALJ's finding of a residual functional capacity to perform sedentary work with a sit/stand option.

C.                    The ALJ's Finding on Plaintiff's Credibility

Plaintiff contends that the ALJ erred by failing to credit plaintiff's subjective statements and testimony with regard to plaintiff's functional capacity.  (Pl. Br. 17). In her decision, the ALJ lists the factors that she was obliged to consider in assessing plaintiff's credibility.  (Tr. 17-18).  Among these factors are: plaintiff's daily activities; the location, duration, frequency, and intensity of plaintiff's pain and symptoms; factors that aggravate symptoms; type, dosage, effectiveness and side effects of medications; treatment other than medication; any measures other than treatment used to relieve pain. See 20 C.F.R. § 404.1529 (c).  (Tr. 17-18).

To support plaintiff's argument on credibility, plaintiff cites to testimony in which she described her pain, described how pain affects her daily life, and described her medication regimen.  (Pl. Br. 17-18).  The ALJ did not dispute that plaintiff experiences pain and

that her pain might interfere with daily life.  Rather, applying the criteria set forth in the

Commissioner's regulations, the ALJ found that medications and treatment have been helping

plaintiff to the degree necessary to enable her to perform sedentary work with a sit/stand option.

(Tr. 18-19).  The ALJ supported this determination with medical records and testimony

explaining plaintiff's activities, medications and side effects thereof, treatments, and aggravating

factors.  (Tr. 18-19).  In particular, the ALJ noted plaintiff's allegations that she cannot work,

that her symptoms limit her to walking 2 blocks, standing for no more than 1 hour, sitting for 30

minutes, lifting 8-10 pounds, and that she must lie down throughout the day.  (Tr. 18).  Despite

plaintiff's claims, the ALJ cited notes by plaintiff's treating orthopaedist stating that plaintiff has

responded to treatment and that medications are controlling plaintiff's symptoms.  (Tr. 18).

Further, the ALJ found "aggravating factors" in Dr. Smith's notes, which stated

that plaintiff presented with back pain after working on her feet all day.  (Tr. 18).  The ALJ also

explained that Dr. Smith reported positively on plaintiff's medication regimen, that she was

tolerating the medications, that there were no new side effects, and that the medications were

helping with plaintiff's quality of life.  (Tr. 18).  As a result of the medical records and plaintiff's

testimony concerning medication, the ALJ concluded that plaintiff's pain was not uncontrollable

or disabling.  (Tr. 18).  Plaintiff, however, takes issue with the ALJ's findings as to the pain and

effectiveness of medications and cites to plaintiff's testimony at the hearing.  (Pl. Br. 18-19).

Plaintiff emphasizes the portions of testimony that state that plaintiff can "semi" function, that

the pain exists more than often than not, and that plaintiff needs to sit, stand, and lay throughout

the day.  (Pl. Br. 19).  Based on this same testimony, the ALJ could find that plaintiff does

function throughout the day with the assistance of continuous medication, albeit she is not pain-

free.

There is additional evidence to support the ALJ's determination of plaintiff's credibility.  In June 2005,  plaintiff presented to Dr. Smith with "very severe pain," yet Dr. Smith noted that she was "very active, working, caring for her 6 year-old."  (Tr. 240-241).  At that time, Dr. Smith encouraged her to find a sit down type job.  (Tr. 240).  More than one year later, in August 2006, plaintiff reported that her daily activities included light chores at home, taking her daughter to camp, and going to the pool.  (Tr. 267).

Accordingly, this court finds that the ALJ appropriately applied the criteria set forth in the Commissioner's regulations as to plaintiff's credibility, and that there is substantial evidence of record to support the ALJ's determination.

D.              The ALJ's Reliance on the Vocational Expert's Testimony

Plaintiff asserts that the vocational expert's testimony is unsupported by substantial evidence of record because it is based on a residual functional capacity that is contradicted by the weight of medical evidence.  (Pl. Br. 19).  As explained in Section V.B of this report, the ALJ weighed the evidence of record, including the opinions of Dr. Smith, Dr. Gouda, and Dr. Gansheroff.  There was substantial evidence to support the ALJ's determination that plaintiff is capable of sedentary work with a sit/stand option.

Plaintiff also takes issue with the vocational expert's opinion that plaintiff can perform the duties of credit clerk, order clerk, and charge account clerk.  (Pl. Br. 21).  In particular, plaintiff argues that the jobs recommended by the VE are inconsistent with the limitations that plaintiff sit and stand at her own option.  (Pl. Br. 21).  The VE expressly indicates that the "sit/stand option" can be dealt with in the labor market and that the jobs the VE

recommended allow plaintiff to change position at will.  (Tr. 319).

    With respect to the VE's job recommendations, plaintiff focuses on the number of calls fielded by each job as indicative of the stress level inherent in the job.  (Pl. Br. 20).  Plaintiff also focuses on the amount of note taking that each job entails as indicative of how much seated time is required.  (Pl. Br. 20).  Plaintiff contends that because the VE was unable to answer precisely how many calls each job would handle, and exactly how many notes would have to be taken, the plaintiff would not be allowed to sit and stand at her own option.  (Pl. Br. 19-21). To the extent that note-taking is required, Plaintiff incorrectly assumes that note-taking must be performed in a seated position.  Plaintiff also overlooks that while the VE could not provide exact numbers for each question, the VE relied on information from the Dictionary of Occupational Titles (DOT).  (Tr. 322).  Specifically, the DOT describes the position of credit clerk as one that involves frequent talking and occasional fingering.  (Tr. 323).  The VE clarified that this position involved more talking than fingering.  (Tr. 323).  With regard to the position of order clerk, the VE stated that some jobs require note-taking while others do not.  (Tr. 324).  The VE explained that for the positions that do not require note-taking, the employee simply calls out verbal orders.  (Tr. 324).  Lastly, with respect to the charge account clerk position, the VE explained that DOT information describes it as requiring occasional fingering (one third of the day, intermittently), and frequent talking.  (Tr. 326).

    Based on the VE's opinion that the jobs can vary in the percentage of calls and notations required, it is likely that not every credit clerk, order clerk, and charge account clerk position would comport with plaintiff's physical limitations.  Nevertheless, upon consideration of the DOT descriptions of jobs and their duties, coupled with the VE's view that a

sit/stand option can be accommodated in the job market, this court believes that plaintiff can find a position that is consistent with her limitations.  Accordingly, this court finds that the ALJ was correct in relying on the testimony of the vocational expert and correct in finding plaintiff suitable to work as a credit clerk, order clerk, and charge clerk.  _____

_____Therefore, this court makes the following:

<u>RECOMMENDATION</u>

AND NOW, this _____ day of January, 2009, it is

RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be DENIED.

BY THE COURT:

___/s/ LINDA K. CARACAPPA_____
LINDA K. CARACAPPA
UNITED STATES MAGISTRATE JUDGE

_____